**Henry G. BAXTER, Petitioner,**

v.

**Jody Amanda BAXTER, Respondent.**

**No. CIV.A. 04–308JJF.**

United States District Court,
D. Delaware.

July 9, 2004.

**537**

to physical or psychological harm or otherwise place the Child in an intolerable situation. The parties have filed papers, and I held an evidentiary hearing on June 28, 2004, at which both parties presented testimony by witness and affidavits entered into the record without objection. In reaching my conclusions, I have only made factual findings to the extent necessary to answer the legal questions presented.

## DISCUSSION

### I. Parties' Contentions

Petitioner contends that the Child should be returned to Australia because Australia is the Child's habitual residence, the removal from Australia by Respondent was wrongful, and no exceptions under the Hague Convention apply.

Respondent contends that the Child should not be required to return to Australia because: 1) Australia is not the Child's habitual residence because the Child (a) never had "any sense of home, community or permanency until" the Child came to the United States, and (b) both parents agreed that the Child should be raised in Respondent's hometown in Delaware; 2) Respondent's removal of the Child was not wrongful because it was done with Petitioner's full knowledge and consent; and 3) Respondent's removal of the Child from Australia was not wrongful because Petitioner was not exercising custody rights at the time Respondent came to the United States with the Child. Respondent alternatively contends that, if I were to find that the Hague Convention does apply, the Child need not be returned to Australia because the exception for children that will be subject to physical or psychological harm applies in the circumstances of this case.

Matt Neiderman, Esquire of Duane Morris, LLP, Wilmington, DE, for Petitioner.

Gerry Gray, Esquire of Gray & Associates, Georgetown, DE. Of Counsel: Georgia L. Leonhart, Esquire of the Law Offices of Georgia L. Leonhart, Ocean City, MD, for Respondent.

### *MEMORANDUM OPINION*

FARNAN, District Judge.

Presently before me is the Expedited Petition For The Return Of Minor Child To Australia Pursuant To The Hague Convention On The Civil Aspects Of International Child Abduction filed by Petitioner, Henry G. Baxter. (D.I.1.) For the reasons that follow, I will deny the Petition.

### INTRODUCTION

In order to determine whether the minor child of Petitioner and Respondent (the "Child") must be returned to Australia pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention") I must decide a series of legal issues including: 1) what is the "habitual residence" of the Child; 2) whether Petitioner consented to the removal of the Child to the United States; and 3) whether returning the Child to Australia would expose the Child

## II. Decision

### A. *The Child's Habitual Residence Is Australia*

The threshold question is what is the Child's habitual residence as that term is understood pursuant to the Hague Convention. The Hague Convention does not define the term "habitual residence"; however, in *Feder v. Evans–Feder,* 63 F.3d 217 (3d Cir.1995), the Third Circuit interpreted habitual residence to mean:

[T]he place where he or she has been physically present for an amount of time sufficient for acclimatization and which has a "degree of settled purpose" from the child's perspective. We further believe that a determination of whether any particular place satisfies this standard must focus on the child and consists of an analysis of the child's circumstances in that place and the parents' present, shared intentions regarding their child's presence there.

*Id.* at 224.

After a consideration of the testimony and other evidence offered by the parties, I conclude that the Child's habitual residence is Australia. In reaching this conclusion, I find the testimony of Petitioner and Respondent to be in agreement and to establish that the Child, until the summer of 2003, was a habitual resident of Australia. Although Petitioner, Respondent, and the Child frequently moved, I find that Petitioner and Respondent held a shared intention, until the summer of 2003, that the Child be a habitual resident of Australia.

### B. *Was Respondent's Removal Of The Child Wrongful?*

■ Although I have concluded that the Child's habitual residence is Australia, I find that Petitioner consented to the Child's removal to the United States in the summer of 2003. Article 13 of the Hague Convention provides for various defenses to a petition for return of a child. In relevant part, Article 13 states:

[T]he judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that -

a. the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention;

Hague Convention, Art. 13. Respondent has the burden of establishing the defense of consent to the removal by Petitioner by a preponderance of the evidence. 42 U.S.C. 11603(e)(2)(B); *Gonzalez–Caballero,* 251 F.3d 789, 793 (9th Cir.2001).

I find the testimony of Petitioner, Respondent, Respondent's sister, and Respondent's mother to be consistent in proving that the living conditions for the Child were extremely difficult and troublesome in Australia prior to the Child's removal to the United States in September of 2003. I further find that both Petitioner and Respondent agreed that it was in the best interests of the Child to remove the Child to the United States based on the harsh living conditions the family, and particularly the Child, experienced in the Tiwi Islands. This finding is supported by the uncontested testimony of Petitioner and Respondent detailing Petitioner's purchase of one-way tickets to the United States for both Respondent and the Child, Respondent's taking her family's "paperwork" to the United States, including birth certificates, passports, marriage license, immunization records, and divorce decrees, and the hiring by Respondent's family of a contractor to enclose a porch at the home

of Respondent's family to provide a permanent play room for the Child.

The Hague Convention was enacted to prevent acts of removal by one parent in a manner that disregarded the rights of the other parent. *See* Hague International Child Abduction Convention, Text and Legal Analysis, 51 Fed.Reg. 10494, 10506 (March 26, 1986). In this case, there was no disagreement between Petitioner and Respondent that the Child should move to the United States. The only disagreement established by the evidence is whether Petitioner agreed that the United States would become a permanent residence or whether Petitioner believed this was the first step for finding a suitable permanent residence for the Child outside Australia. However, it is clear from the evidence that the parties did not intend to resolve this question in any event until after Respondent and the Child had moved to the United States.

I find that what has affected the amicable resolution of this question is the romantic relationship that Respondent became involved in almost immediately upon her arrival in the United States. However, I conclude that this intervening event, for the purposes of the legal issue presented, cannot alter Petitioner's consent to the removal of the Child from Australia to the United States. The status of Petitioner's and Respondent's relationship, and the impact of Respondent's new romantic interest, are factors to be considered by a court with jurisdiction to hear issues related to the possible divorce of Petitioner and Respondent.

C.  *Grave Risk of Physical or Psychological Harm*

■ Given my conclusion concerning Petitioner's consent to the Child's removal, I am not required to decide the issue of potential harms the Child may be exposed to if returned to Australia. However, because I find the testimony of both Petitioner and Respondent to be persuasive on this issue, I do find that forcing a return of the Child to Australia would expose the Child to the risk of physical or psychological harm or otherwise place the Child in an intolerable situation. I believe I should offer my views on this issue as an alternative holding.

The "danger exception" of the Hague Convention provides that a child need not be returned to his habitual residence if "a grave risk [of] return would expose [him] to physical or psychological harm or otherwise place [him] in an intolerable situation." Hague Convention, Art. 13(a). The implementing legislation of the Hague Convention, specifically 42 U.S.C. § 11603(e)(2)(A), requires a respondent to prove this exception by clear and convincing evidence. Further, the Third Circuit has held that this exception should be narrowly drawn in order to prevent undermining the express purpose of the Hague Convention. *Feder,* 63 F.3d at 226.

The evidence produced by both Petitioner and Respondent is that in the summer of 2003 they agreed that the living environment in Australia was not appropriate for the Child. I find their individual testimony to establish that the living environment in Australia was physically threatening to the Child, and the social situation of the Child, as described by Petitioner and Respondent, to be psychologically damaging to the Child. Further, I find that based on the difficult living conditions, the Petitioner and Respondent agreed that it would be best for the Child to live in the United States.

In making the above findings, I have considered the Petitioner's evidence that in the last six months he has established a residence for the Child, but find this evidence to be insufficient to persuade me

that returning the Child to Australia at this time would not expose the Child to the grave risk of physical or psychological harm that lead to the decision to move the Child to the United States. Accordingly, I conclude that the grave risk exception applies in the circumstances of this case. Petitioner will have the opportunity to present his evidence to a court more able both by experience and resources to more fully evaluate it.

## CONCLUSION

In sum, for the reasons discussed, I conclude that the habitual residence of the Child is Australia, that the Child's removal from Australia to the United States was with Petitioner's consent, and further, that a return of the Child to Australia would expose the Child to a grave risk of physical or psychological harm, or place the Child in an intolerable situation.

An appropriate Order will be entered.

## *FINAL ORDER*

At Wilmington, this 9th day of July, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1) The Expedited Petition For The Return Of Minor Child To Australia Pursuant To The Hague Convention On The Civil Aspects Of International Child Abduction filed by Petitioner, Henry G. Baxter (D.I.1) is *DENIED;*

2) The Child shall remain in the custody of Respondent, Jody Amanda Baxter, so as to preserve the status quo;

3) The Child shall not be removed from Delaware without further proceedings before this Court or a state court with juris-

diction over the issue of custody of the Child.